ROBERT KANE (CSB No. 71407)
LAW OFFICES OF ROBERT KANE
870 Market Street
San Francisco California. 94102
Tel: (415) 982-1510; Fax: (415) 982-5821
rkane1089@aol.com

PAUL B. COHEN (CSB No.148371)
BROOKE THATCHER (CSB No. 228637)
LEGAL AID OF MARIN
30 NORTH SAN PEDRO ROAD
SAN RAFAEL, CALIFORNIA 94903
Tel: (415) 492-0230; Fax: (415) 492-0947
bthacher@legalaidofmarin.org

SHIRLEY HOCHHAUSEN (CSB No. 145619)
COMMUNITY LEGAL SERVICES IN
EAST PALO ALTO
2117-B University Avenue
East Palo Alto, CA 94303
Tel: (650) 326-6440; Fax:(650) 326-9722
S_Hochhausen@hotmail.com

Attorneys for PLAINTIFF Audrey McNamara Nevis

ORIGINAL FILED

MAY 15 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

EMC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
NORTHERN DIVISION

C 07 2568

AUDREY MCNAMARA NEVIS,

   Plaintiff,

v. WELLS FARGO BANK, EXECUTIVE
FINANCIAL LENDING INC. JOHN B. SPEAR, SHAI
MOSHE, GATEWAY TITLE COMPANY, QUALITY
LOAN SERVICES. CORP. and DOES 1-100, inclusive

   Defendants.

Case No.

COMPLAINT FOR INJUNCTIVE
RELIEF, RESCISSION,
RESTITUTION, DAMAGES,
PUNITIVE DAMAGES, AND
ATTORNEY'S FEES

JURY TRIAL DEMANDED

VERIFIED COMPLAINT

## INTRODUCTION

1. Audrey Nevis ("Plaintiff") is an, 82 year old woman who has lived in her own home in Marin County, California for 18 years. Due to the fraudulent, deceptive and negligent acts and practices of the defendants that are the subject of this complaint. Plaintiff faces foreclosure and the loss of her home.

2. Plaintiff seeks to stop defendants from going forward with the foreclosure sale of her home and to recover the more than $80,000 in costs fees and interest that she paid for an exploitive and illegal home loan.

3. The loan which is the subject of this action is presently owned by Wells Fargo Bank ("Wells Fargo"). The loan was originally made by New Century Mortgage Company ("New Century") who continues to service the loan. New Century has filed for bankruptcy protection and is protected from suit by the automatic stay provisions of the Bankruptcy Act and is consequently not a defendant in this action. Quality Loan Services ("Quality") to carry out the foreclosure.

4. At all time relevant to this complaint, New Century was a corporation engaged in sub-prime home mortgage lending and engaged in acts and practices that targeted the financially unsophisticated, the elderly, female and minority customers which acts and practices include deceptive promises about the home mortgage loans, "juicing" mortgages with hidden rates and fees, flipping loans by refinancing to generate fees, making loans based on the value of the property rather than the income of the borrower, making loans that they know or should know cannot be repaid by low income borrowers and marketing their loans through brokers whom they know or should know forge and misrepresent applications and fail to deliver statutorily mandated disclosures to borrowers.

5. New Century is presently subject of investigations by the Securities and Exchange Commission ("SEC") and the California Attorney General who has obtained a Cease and Desist Order enjoining New Century from soliciting or accepting either directly or indirectly any residential mortgage loan applications based on the findings that New Century

---

VERIFIED COMPLAINT

failed to demonstrate the financial responsibility, character and general fitness that would support the belief that the business will operate honestly, fairly and in accordance with the requirements of the California Finance Lenders Law.

6. Plaintiff is informed and believes and thereon alleges that notwithstanding its failures in oversight, underwriting, risk management, and pending investigations by the California Attorney General and the SEC, New Century sold the loan which is the subject of this action to Wells Fargo.

7. In addition to investigations by the SEC and California Attorney General, a further investigation of the loan which is the subject of this complaint and the conduct of New Century are the subject of an investigation by the Marin County District Attorney.

8. Plaintiff is informed and believes and on that basis alleges that defendants were or should have been aware of the pending investigation by the Marin County District Attorney as they were contacted by telephone by the office of the District Attorney and by Plaintiff's counsel, Brooke Thacher, of Legal Aid of Marin. On My 9 and 10, 2007 Fax Plaintiff's counsel advised Wells Fargo, through their foreclosure agent Quality Loan Services ("Quality"), that the loan which is the subject of this action was rescinded pursuant to the provisions of the Truth in Lending Act ("TILA").

9. Plaintiff is informed and believes and on that basis alleges that defendants Wells Fargo and Quality were or should have been aware of Plaintiff's claims that the loan was fraudulent, was designed not to be repaid and failed to provide Plaintiff with disclosures mandated by federal and state law and nonetheless proceeded to record a notice of default on the property and schedule the foreclosure sale for May 21, 2007.

### JURISDICTION AND VENUE

10. This Court has personal jurisdiction over the defendants named herein because a substantial portion of the wrongdoing alleged in this complaint took place in the Northern District of California, and the defendants are authorized to and regularly do business in the Northern District of California

---

2

VERIFIED COMPLAINT

11. This is an action for violations of TILA (15 U.S.C. §§1601 *et seq.*) and the Real Estate Settlement and Procedures Act ("RESPA" (12 U.S.C. §2602). Plaintiff further invokes the pendent jurisdiction of this Court to consider claims arising under state law. Jurisdiction is thus founded on 28 U.S.C. §§1331 and 1367.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events and omissions giving rise to this complaint occurred within the Northern District of California. The loan contracts between Plaintiff and defendants were made and to be performed, and the obligations arose in the Northern District of California.

## PARTIES

13. Plaintiff is 82 years old woman who is a high school graduate and is now retired and has lived in her own home in Marin County since 1988.

14. Plaintiff is informed and believes and on that basis alleges that defendant Wells Fargo is a banking institution chartered in California, admitted and licensed to do business in California and the second largest originator and servicer of home mortgages, with $392 billion in originations and $1 trillion in servicing in 2005 and a net income of over $2 billion in the first quarter of 2006 alone. Upon information and belief, Wells Fargo has a history of intentionally turning a blind eye to fraudulent and predatory lending practices in connection with the loans it purchases and services.

15. Plaintiff is informed and believes and on that basis alleges that Wells Fargo was on actual or constructive notice of Plaintiff's allegation that the loan was fraudulent and failed to comply with federal and state consumer protection statutes, when it purchased the loan from New Century.

16. Plaintiff is informed and believes and on that basis alleges that defendant Executive Financial Lending Inc. ("Executive") is a California corporation admitted and licensed to broker mortgage loans under license number 01520578 issued by the California Department of Real Estate ("DRE") with a principal place of business in Sherman Oaks, California, and doing business in Marin County.

17. Plaintiff is informed and believes and on that basis alleges that defendant John B. Spear ("Spear") was at all relevant times the holder of a license issued by DRE and was at all relevant times the officer/broker of Executive with the responsibility of supervising the mortgage brokerage operations of Executive and its employees.

18. Plaintiff is informed and believes and on that basis alleges that defendant Shai Moshe ("Moshe") was at all relevant times an employee of Executive and the salesman who solicited the Plaintiff to make the subject loan and who was the primary point of conduct in the making of the subject loan.

19. Plaintiff is informed and believes and on that basis alleges that Quality Loan Services ("Quality") is a California Company specializing in real estate services including foreclosures. On information and belief they have been retained by New Century's to carry out the foreclose on Plaintiff's home.

20. Plaintiff is informed and believes and on that basis alleges that Gateway Title Company is the a title and escrow company that "closed" the subject loan and acted in the capacity of Plaintiff's fiduciary for this purpose.

21. The true names and capacities, whether individual, corporate or otherwise, of defendants named in this action as Does 1-100, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named defendants is in some manner legally responsible for the events and damges Plaintiff alleges in this complaint, contributed to the wrongs and damages herein alleged, or claim a legal or equitable right, title, stake, lien or interest in the property which is the subject of this action. Plaintiff will amend this complaint to allege the true names and capacities of the fictitiously named defendants when they have been ascertained.

22. Plaintiff is informed and believes and on that basis alleges that each defendant was the agent and/or employee and/or principal of each of the remaining defendants, and in doing the acts herein alleged, were acting within the course and scope of such agency and

employment, and/or with the knowledge, consent, or authority of each of the remaining defendants and/or with knowledge of their acts and/or wrongdoing. By virtue of the foregoing, each defendant had knowledge and/or constructive notice of, and/or authorized and consented to the acts of each of the other defendants, and /or ratified the wrongful acts of each of the other defendants, as herein alleged, by among other things, retaining and sharing in the benefits of such acts.

23. Plaintiff is informed and believes and on that basis alleges that defendants, and each of them, knowingly and willfully entered into an agreement or agreements and/or conspiracy or conspiracies with the other defendants to do some or all of the acts hereon alleged.

24. Plaintiff is informed and believes and on that basis alleges that the defendants and each of them, negligently employed and retained defendant employees and/or agents and failed to properly supervise train direct and or control their actions.

**GENERAL FACTUAL ALLEGATIONS**

25. Plaintiff realleges and reincorporates by this reference the allegations of Paragraphs 1 through 24.

26. Plaintiff is an 82 year old retired woman residing in Marin County. Plaintiff has a high school education, is financially unsophisticated. retired from employment and subsists on an income from Social Security in the amount of $1,080 per month.

27. In or about 1988, Plaintiff purchased a home at 16 Creekside Dr., San Rafael, California,("the Property") for about $300,000. As of February 2007, the Property had a value of about $930,000 with a mortgage of about $880,000, for which Plaintiff had a monthly mortgage payment of $ 5,739.95.

**Defendants' Scheme to Defraud Plaintiff Begins With a "Cold Call"**

28. In September 2006, Moshe made a "cold call" to Plaintiff in a purported effort to sell her a mortgage loan. At the time, Plaintiff was concerned about meeting her financial obligations. Plaintiff told Moshe that while she had refinanced her home in the past, that she

had been unable to refinance recently and that she had been turned down by other lenders. Moshe told the Plaintiff not to worry, that he was very well connected and that he would produce a loan for her at "no cost", with a monthly payments on the new loan which would be significantly lower than her prior payments. Moshe also promised that the loan he would get Plaintiff would pay off her existing debts and provide a sum of cash so that she could make the monthly payments on the proposed loan.

29. Moshe requested further information regarding the Property and Plaintiff's employment prior to her retirement. When Plaintiff told Moshe that she had been a stewardess, he said "I can work with that" and reassured Plaintiff that he could obtain the promised loan.

30. Shortly after this first call, Moshe advised the plaintiff that he would Fax some papers to the local Kinko's. Moshe instructed her to sign the papers and return them to him by fax. Among the papers that Moshe sent was an application containing the false information that Plaintiff was employed as travel agent.

31. Upon reading the papers and seeing the incorrect employment information, Plaintiff telephoned Moshe and told him that the information was incorrect. Moshe told her not to worry, to sign the papers and that this was just "standard operating procedure".

32. Soon after the initial conversation Moshe telephone Plaintiff to advise her that she had been "approved" for a loan in the amount of $880,000. He instructed her that an "independent notary public would come to Plaintiff's home with the loan documents and that the Plaintiff was to sign as she was instructed to by the notary."

33. On or about June 8, 2006, a notary did come to the Plaintiff's home. The notary flipped the pages of a pile of documents and directed Plaintiff, where to sign and Plaintiff signed as directed. The notary left some documents with Plaintiff and the escrow was handled by Gateway.

34. At the time of soliciting and assisting the Plaintiff in getting the subject loan defendants knew or should have known that Plaintiff was 81 years old, financially unsophisticated, unemployed with a total average monthly income of about $1,050, and that

she had been unable to refinance her home despite having contacted other lenders. They knew or should have known that Plaintiff was not qualified for a mortgage on her income of $1.050.

35. Defendants knew or should have known that Plaintiff could not pay $ 5,739.95 per month and that the loan would very soon fall into default and that the property would be sold in foreclosure. The subject loan was designed to earn fees for defendants and not to be of benefit to Plaintiff.

36. At the time these false promises and misrepresentations alleged above were made, defendants knew or should have known that the representations were false, that the loan they were inducing Plaintiff to take was a high priced loan, beyond her ability to repay, a variable rather than a fixed loan, that it would increase the amount of her monthly payment and that Plaintiff had insufficient income to repay the subject loan.

37. At the time defendants made the false promises, misrepresentations and concealments alleged above, Plaintiff did not know that those promises and representations were false, or that the defendants had fraudulently concealed that they knew that Plaintiff would not be able to afford the loan and would face the imminent foreclosure of her home.

38. The costs fees and interest New Century derived from the loan in question amount to in excess of $ 25,000. Executive earned in excess of $ 35,000 for brokering the loan which resulted in a cash payment to Plaintiff of approximately $20,000 and other defendants earned significant fees in processing and closing the subject loan. Looking at the figures, it is clear that this loan was designed not to benefit the Plaintiff and not to be repaid but, rather, to generate fees for the defendants and inevitably result in the foreclosure of Plaintiff's home.

39. On or about July 2006, Plaintiff was shocked to receive a bill for her monthly mortgage payment in the amount of $5,739.95.

40. Plaintiff telephoned Executive's office to inquire about why the amount of the payment was so high. Plaintiff spoke with Moshe's assistant "Tina". When Plaintiff complained that the payments were $1000, higher per month than her previous payments, not lower as Moshe had promised, Tina told her that it was too late to do anything because Plaintiff

had already signed the papers. She asked for Moshe to telephone her but, despite repeated calls to Executive, no one returned her calls.

41. Plaintiff grew increasingly concerned about the loan and inquired of several people regarding loan procedures. She made a complaint to the Office of the Marin County District Attorney who is presently conducting a criminal investigation of Executive, its officers and employees as well as the procedures under which the loan was approved by New Century. The office of the District Attorney referred Plaintiff to the Offices of Legal Aid of Marin for further assistance.

42. Plaintiff is informed and believes and on that basis alleges that at all relevant times, Spear was the only person affiliated with Executive who possessed a real estate broker's license. By statute, this license permitted Executive's officers and employees to perform mortgage lending activities. By allowing Executive to operate under the auspices of his license, Spear became Executive "designated officer/broker," and as such, was required to supervise and control the mortgage lending activities of Executive and its employees.

43. Upon information and belief, Spear failed in his duty to supervise Executive's lending activities. Spear failed to establish and/or maintain polices, rules, procedures and systems to review, oversee, inspect and manage aspects of Executive's business that Spear had a duty to supervise, including without limitation (a) transactions requiring a real estate license; (b) documents which may materially affect the rights or obligations of a party to a real estate transaction; (c) filing, storage and maintenance of such documents; (d) handling of trust funds; (e) advertising of any service for which a license is required; (f) familiarizing all Executive employees with federal and state law requirements related to Executive's business activities; and (g) keeping regular, consistent and accurate reports of licensed activities undertaken by Executive and its employees.

44. At the time defendants sold Plaintiff the loan by way of the fraudulent and predatory lending scheme described herein, Plaintiff was 81 years old, low-income and financially inexperienced. In soliciting, brokering and selling the loan as alleged herein,

defendants knowingly and with malicious intent made a loan to plaintiff that they knew or should have known could not afford or repay and with the intention of enriching themselves and providing no benefit to Plaintiff.

45. As a direct and proximate result of the Defendants' conduct and practices in targeting Plaintiff as alleged above, Plaintiff's home is now subject to a mortgage in the amount of $880,000, which is more than the mortgage Plaintiff had prior to entering the loan; is in arrears of the loan in the approximate amount of $ 20,000 or more; has suffered the costs of obtaining the loan, including a broker's fee and a yield spread premium; is obliged to pay a prepayment penalty of approximately $35,000 to escape the loan and faces the imminent threat of foreclosure on her home.

### FIRST CAUSE OF ACTION
### Violations of the TILA and Regulation Z
### (Against all defendants except Quality)

46. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. Defendants are creditors within the meaning TILA.

48. The loan transaction entered into by Plaintiff with defendants are high-fee loans within the meaning of 12 C.F.R. section 226.32(a) (1) (ii).

49. Defendants have violated the requirements of TILA and Regulation Z in the following and other respects:

    a. By failing to provide in a timely and adequate way, the required disclosure, commonly known as the "three day right of rescission" in violation of 15 U.S.C. § 1635 (a),

    b. by failing to provide the required disclosure in violation of 1638(b) and Regulation Z § 226.17(b);

    c. by failing to provide the required disclosures clearly, conspicuously in writing in violation of 15 U.S.C. § 1632 and Regulation Z § 226.17(a);

    d. by failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638 (a)(3) and Regulation Z § 226.18(d);

    e. by improperly including certain charges in the amount financed which are finance charges, defendant improperly disclosed the amount financed in violation of 15 U.S.C. § 1638(a) (2) and Regulation Z § 226.18 (b).

    f. by calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. §1606, Regulation Z § 226.22, the defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638 (a) (4) and Regulation Z § 226.18(c).

    g. by extending credit to plaintiffs based on plaintiffs' collateral rather than considering plaintiffs' current and expected income, current obligations, and employment status to determine whether plaintiffs are able to make the scheduled payments to repay the obligation in violation of section 129(h) of TILA, 15 U.S.C. §1639(h) and section 226.32(e) (l) of Regulation Z, 12 C.F.R. §226.32(e) (l).

    h. by including a prohibited "prepayment penalty" provision in violation of section 129(c) of TILA; 15 U.S.C. §1639(h) and section 226.32(d) (6) of Regulation Z, 12 C.F.R. § 226.32(d) (6).

50.   Because of the violations of TILA listed above, plaintiff retained the right to rescind the transaction up to three years after its consummation.

51.   On May 8, 9, and 10th Plaintiff rescinded the instant loan.

52.   As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff is entitled to restitution and disgorgement of the wrongful commissions and windfall profits taken by the Defendants as alleged herein, as well as statutory and punitive damages all in an amount to be proven at trial.

53.   Plaintiff faces imminent and irreparable injury if the foreclosure of Plaintiff's