ORIGINAL
FILED

MAY 1 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1
2
ROBERT KANE (CSB No. 71407)
LAW OFFICES OF ROBERT KANE
3
870 Market Street
San Francisco California. 94102
4
Tel: (415) 982-1510; Fax: (415) 982-5821
rkane1089@aol.com
5
6
PAUL B. COHEN (CSB No.148371)
BROOKE THATCHER (CSB No. 228637)
7
LEGAL AID OF MARIN
30 NORTH SAN PEDRO ROAD
8
SAN RAFAEL, CALIFORNIA 94903
Tel: (415) 492-0230; Fax: (415) 492-0947
9
bthacher@legalaidofmarin.org

10
SHIRLEY HOCHHAUSEN (CSB No. 145619)
11
COMMUNITY LEGAL SERVICES IN
EAST PALO ALTO
12
2117-B University Avenue
East Palo Alto, CA 94303
13
Tel:  (650) 326-6440; Fax:(650) 326-9722
S_Hochhausen@hotmail.com
14

E-filing                EMC

15
Attorneys for PLAINTIFF Audrey McNamara Nevis

16
17
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
NORTHERN DIVISION
18
AUDREY MCNAMARA NEVIS,                            Case No.     C 07    2568
19
                    Plaintiff,                    PLAINTIFF AUDREY MCNAMARA
20                                                NEVIS MEMORANDUM OF POINTS
             v.                                   AND AUTHORITIES IN SUPPORT
21
WELLS FARGO BANK, EXECUTIVE FINANCIAL             OF *EX PARTE* MOTION FOR
LENDING INC. JOHN B. SPEAR, SHAI MOSHE,           TEMPORARY RESTRAINING
22
GATEWAY TITLE COMPANY, QUALITY LOAN               ORDER AND ORDER TO SHOW
SERVICES CORP and DOES 1-100, inclusive           CAUSE REGARDING
23                                                PRELIMINARY INJUNCTION
24                  Defendants.
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................1

II.     STATEMENT OF FACTS ...................................................................2

III.    ARGUMENT.......................................................................................5

        A.      Ms. Nevis Seeks And Is Entitled To A Narrowly Tailored TRO And
                Preliminary Injunction ......................................................................5

        B.      The Legal Standard ..........................................................................5

        C.      Ms. Nevis Is Likely To Succeed In Proving Her Claims ........................5

                1.      Ms. Nevis will likely succeed in proving her fraud claim ................6

                2.      Ms. Nevis will likely succeed in proving her TILA claim.........  .....8

                        a.TILA Violation Number 1: ...........................................8

                        b.TILA Violation Number 2: ............. ..............................8

                3.      Ms. Nevis will likely succeed in proving her § 17200
                        claim.......................................................................................9

        D.      The Threatened Foreclosure of Ms. Nevis Home Constitutes Irreparable
                Harm and the Balance of Hardships Favors Ms. Nevis...... .................9

        E.      Public Interest Favors Granting Injunctive Relief to Prevent
                Foreclosure...........................................................................10

IV.     CONCLUSION .................................................................................12

ii

# TABLE OF AUTHORITIES

## Cases

Children's Television, Inc. v. General Foods Corp.,
    35 Cal. 3d 197 (1983) .................................................................... 9

Cole v. Lovett,
    672 F. Supp. 947 (S.D. Miss. 1987)............................................. 8

Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.,
    774 F.2d 1371 (9th Cir. 1985) ...................................................... 5

First Brands Corp. v. Fred Meyer, Inc.,
    809 F.2d 1378 (9th Cir. 1987) ...................................................... 5

Gilder v. PGA Tour, Inc.,
    936 F.2d 417 (9th Cir. 1991) ........................................................ 6

Girard v. Bell,
    125 Cal App. 3d 772 (1981)........................................................... 6

Mount v. LaSalle Bank,
    926 F. Supp 759 (N.D. Ill. 1996) ................................................. 2

Nat'l Ctr. for Immigrants Rights, Inc. v. INS,
    743 F.2d 1365 (9th Cir. 1984) ...................................................... 5

Sammartano v. First Judicial Dist. Ct., in & for County of Carson City,
    303 F.3d 959 (9th Cir. 2002) ...................................................... 10

Stone v. Mehlberg,
    728 F. Supp. 1341 (W.D. Mich. 1989) ...................................... 2, 8

Sundance Land Corp. v. Community First Federal Savings and Loan Association,
    840 F.2d 653 (9th Cir. 1988) ...................................................... 10

Underwood v. American Home Mortgage Co.,
    66 B.R. 656 (Bankr. W.D. Va. 1986) ........................................... 8

Washington v. Indiana High School Athletics Ass'n, Inc.,
    181 F.3d 840 (7th Cir. 1999) ........................................................ 6

## STATUTES

15 U.S.C. § 1601 ................................................................................................. 7

15 U.S.C. § 1635 ................................................................................................. 8

15 U.S.C. § 1635(c) ............................................................................................ 8

15 U.S.C § 1639(h) ............................................................................................ 9

15 U.S.C. § 1640(a)(3) ....................................................................................... 8

Cal. Bus. & Prof. Code § 17200 .................................................................. 2, 6, 9

Cal. Civil Code 3345 .......................................................................................... 9

12 C.F.R. § 226.23(b)(1) .................................................................................... 8

iv

## INTRODUCTION

Plaintiff Audrey McNamara Nevis ("Ms. Nevis"), an 82 year old single woman, moves this Court for a temporary restraining order and preliminary injunction to restrain defendants Quality Loan Services Corp. ("Quality") and Wells Fargo Bank ("Wells Fargo") from foreclosing on her San Rafael home where she has lived for the last 18 years. The sale is scheduled for May 21, 2007.

The loan which is the subject of this action was made by New Century Mortgage Co. ("New Century") through one of its cooperating mortgage brokers, Executive Financial Lending, Inc. ("Executive") and the escrow was handled by Gateway Title Company ("Gateway"). The loan was subsequently sold to Wells Fargo with New Century retaining the right to service the loan. New Century has filed for protection under the Bankruptcy Code and is consequently not a party to this action.

The subject loan also violates the "Truth in Lending Act ("TILA") in that material disclosures were withheld from the consumer. Ms. Nevis did not timely receive two properly filled out copies of the "Notice of Right to Cancel" as required by TILA. In these circumstances the consumer retains the right to rescind for up to a period of three years. When the consumer rescinds the loan, as Ms. Nevis has here, TILA provides that the security interest in the loan is canceled. As the security interest underlies the right to foreclose, cancellation of the security interest cancels the right to foreclose. As set forth more fully below, the TILA rescission is binding on Wells Fargo as successor to the New Century loan. Ms. Nevis exercised t her to rescind on My 11, 2007 by delivering a notice of rescission to the foreclosure agents, Quality, and by delivering the notice of rescission to New Century, Executive, Spear, Moshe, Gateway and Wells Fargo on May 14, 2007.

Ms. Nevis is entitled to injunctive relief because the equities are strongly in her favor. Ms. Nevis likely will succeed on her claims. Knowing that Ms. Nevis was 81 years old at the time of the subject loan and lived solely on an income from Social Security, the licensed mortgage brokers, and through them, the lenders who inveigled her to take the loan promised Ms. Nevis that they would get her a refinance at no cost to her and that her monthly loan payments would decrease substantially. They also promised that they would provide sufficient funding to both pay off her existing bills and get cash out sufficient to make the monthly payments on the new mortgage. As it turned out, none of

1    the promises made to Ms. Nevis by the broker and the lender were true. Ms. Nevis paid fees and

2    costs in excess of $ $60,000 to get the loan and is subject to a prepayment penalty exceeding

3    $22,000. The monthly payment on her new loan is $5,736.95 - an amount five times greater than

4    Ms. Nevis' current total income of $1,080 per month.

5        If Quality and Wells foreclose, Ms. Nevis will suffer irreparable harm by being wrongly

6    uprooted from her home. On the other hand, Quality and Wells Fargo will experience no hardship if

7    they are prohibited from presently carrying out the foreclosure, as the real property is insured, is

8    presently not diminishing in value and has a value that is more than sufficient to compensate Wells

9    Fargo should the sale eventually take place.

10       In addition to violations of TILA, the broker, lender and Title Company Gateway committed

11    violated the Real Estate Settlement Procedures Act ("RESPA") section 8, by, among other wrongs,

12    charging for services they did not perform. and failing to timely deliver adequate consumer notices

13    mandated by RESPA the defendants committed unfair trade practices pursuant to California

14    Business and Professions Code section 17200.as further detailed herein. For all of these reasons and

15    for the reasons more fully stated below, Ms. Nevis respectfully requests that her Application for

16    Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction be

17    granted.

18    I.     STATEMENT OF FACTS

19       Ms. Nevis lives at 16 Creekside Drive, San Rafael, California, a home she bought

20    in 1988 for $320,000. (Nevis Dec. at ¶4.) She lives on $1080.00 per month, an income

21    derived entirely from social security. (Nevis Dec. at ¶3.)

22       Ms. Nevis was "cold called" by a salesman from Executive who proposed that she refinance

23    her home loan. Ms. Nevis told the salesman that she was a senior living on $1,050 a month from

24    social security, could not qualify for a loan and that she had tried to refinance the property and had

25    been turned down. (Nevis Dec. at ¶5.)

26       In the course of her initial conversation with the salesman from Executive, the salesman told

27    Ms. Nevis that he was very well connected and that he would be able to refinance the property on

28

1    very favorable terms. He promised Ms. Nevis that the loan would cost her nothing that the monthly

2    payments would be considerably lower than those she was making, would both pay off her existing

3    debts and produce sufficient cash to allow her to make future mortgage payments. The Executive

4    salesman asked Ms. Nevis some questions about her prior employment and when he learned she had

5    been a stewardess, said "I can work with that", assuring Ms. Nevis that he could get her the loan he

6    had described. (Nevis Dec. at ¶6.)

7         In a few days time, Ms. Nevis received some papers by fax from the Executive salesman.

8    The papers contained erroneous information stating that she worked as a travel agent. Ms. Nevis

9    telephoned the salesman to report the mistake. He told her to sign the papers and not to worry about

10   the income information. (Nevis Dec. ¶7.) Ms. Nevis got another call from the salesman to advise

11   her that she had been approved for a loan in the amount of $880.000. and that a notary would come

12   to her home to have her sign the loan papers. The Executive salesman instructed Ms. Nevis to sign

13   where the notary indicated. (Nevis Dec. at ¶9.)

14        On June 8, a notary came to the Nevis home with a stack of documents and indicated where

15   Ms. Nevis was to sign. Ms. Nevis signed as instructed. The notary left some documents with Ms.

16   Nevis which Ms, Nevis put in a safe place. (Nevis Dec. at ¶10.)

17        Ms Nevis never met the Executive salesman or any other representative of the broker, the

18   lender New Century, or Gateway. The only person with whom Ms. Nevis had physical contact and

19   the only person who delivered any documents for Ms. Nevis for her to retain was the notary who

20   brought the loan papers to her home. (Nevis Dec. at ¶10.)  When asked by her counsel to look

21   through the documents left by the notary, Ms. Nevis found that there was only one copy of a

22   properly completed, TILA mandated, "Notice of Right to Cancel;" a second copy among the

23   documents, was blank. (Nevis Dec. at ¶14.)

24        When Ms. Nevis received her fist mortgage statement for the new loan, she was shocked to

25   see that the payment requested was $5,736.95. Contrary to the promises made by Executive, the

26   loan payment was $1000, 00 more than the payments on the prior loan. When Ms. Nevis telephoned

27

28

1  Executive to find out what was going on, Ms. Nevis was told that it was too late to do anything as
2  she had already signed the papers. (Nevis Dec. at ¶11.)

3       Contrary to the salesman's oral representations, the loan was not cost free. The loan cost
4  more than $55,000 and is subject to a prepayment penalty of more than $22,000. Executive earned
5  in excess of $35,000 for brokering the loan which resulted in a cash payment to Ms. Nevis of
6  approximately $20,000 other defendants earned significant fees in processing and closing the subject
7  loan. Looking at the figures, it is clear that this loan was designed not to benefit Ms. Nevis and not to
8  be repaid but, rather, to generate fees for New Century, Executive and Gateway and inevitably result
9  in the foreclosure of Ms. Nevis' home.

10      Ms. Nevis was so concerned about the irregularities in her new loan that she went to see the
11  District Attorney for Marin County. An investigation of the loan which is the subject of this
12  complaint and the conduct of New Century are the subject of a criminal investigation by the Office
13  of the District Attorney of Marin County as Case # 184283.

14      Ms. Nevis isn't the only one worried about the way her loan was made. New Century is also
15  presently subject to a Cease and Desist Order issued by the Office of the Attorney General of the
16  State of California and enjoined from "soliciting or accepting either directly or indirectly any
17  residential mortgage loan applications based on the findings in the order which state inter alia New
18  Century Mortgage has failed to demonstrate the financial responsibility, character and general fitness
19  that would support the belief that the business will operate honestly, fairly and in accordance with
20  the requirements of the California Finance Lenders Law."

21      Quality, on behalf of its principals, recorded a "Notice of Default and Election To Sell Under
22  Deed of Trust" on or about January 29, 2007 and filed and delivered a "Notice of Foreclosure Sale"
23  on or about May 3, 2007. ( Nevis Dec.at ¶17, Ex. B.)

24      Since that time, written notice of rescission of the subject loan has been provided to New
25  Century, Wells Fargo, Executive, Gateway and Quality, (Hochhausen Decl. at ¶¶ 5 and 10.)
26  Notwithstanding written notice of rescission of the subject loan (Hochhausen Decl. at ¶¶ 3, 6 and 18),
27  telephone calls to Quality on May 7, 9 and 11 (Hochhausen Decl. at ¶¶ 4, 7, 10), New Century,
28

4

1  Wells, and Quality have been unresponsive to Ms. Nevis' rescission and her request that the

2  foreclosure sale, presently scheduled for May 21, 2007, be canceled based on rescission of the loan

3  and thereby the cancellation of the underlying security interest in the property.

4  II.   ARGUMENT

5       A.   Ms. Nevis Seeks and Is Entitled To A Narrowly-Tailored TRO and
6            Preliminary Injunction

7       Ms. Nevis seeks a narrowly-tailored TRO and preliminary injunction enjoining the owners of

8  the loan, Wells Fargo, the servicers of the loan, New Century and the agent for the foregoing,

9  Quality from foreclosing on her home pending the resolution of this case.

10      B.   The Legal Standard

11      In the Ninth Circuit, an applicant for preliminary injunctive relief must demonstrate: (1) a

12  likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance

13  of hardships favors the applicant; and (4) whether any public interest favors granting an injunction.

14  *See Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985).

15  Alternatively, the applicant must demonstrate either: a combination of probable success on the

16  merits and the possibility of irreparable injury; or serious questions going to the merits and that the

17  balance of hardships tips sharply in the applicant's favor. *See First Brands Corp. v. Fred Meyer,*

18  *Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987). These two tests are not inconsistent. Rather, they

19  represent a continuum of equitable discretion, whereby "the greater the relative hardship to the

20  moving party, the less probability of success must be shown." *Nat'l Ctr. for Immigrants Rights, Inc.*

21  *v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984). As discussed below, Ms. Nevis is likely to prevail on

22  her claims and the equities in this case strongly favor the granting of injunctive relief under either

23  test.

24      C.   Ms. Nevis Is Likely To Succeed In Proving Her Claims

25      In order to show likelihood of success on the merits, a plaintiff does not need to prove an

26  overwhelming likelihood of success, but rather a reasonable probability of success. *Gilder v. PGA*

27  *Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). A likelihood of success may be found even where

28  there is merely a better than negligible chance of succeeding on the merits. *Washington v. Indiana*

5

1   *High School Athletics Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999). Given the facts set forth above,

2   Ms. Nevis has a reasonable probability of success on her fraud claim, her TILA claims, as well as

3   her claim for unfair business practices. These three claims are discussed in detail below.[1]

4           1.      **Ms. Nevis is likely to succeed in proving her fraud claim.**

5           The facts in this case are so egregious and the conduct of New Century and Executive so

6   outrageous that Ms. Nevis will have no difficulty in meeting all the elements of a fraud claim, which

7   are: 1) misrepresentation, 2) knowledge of falsity, 3) intent to defraud or induced reliance, 4)

8   justifiable reliance, and 5) resulting damage. *See Girard v. Bell*, 125 Cal App. 3d 772, 783 (1981).

9           Executive and their employees induced Ms. Nevis to refinance her loan by misrepresenting to

10  her, the loan terms, including the cost of the loan, monthly payment, closing costs, and other terms

11  and conditions. As the "hook," defendants Executive and their employees told Ms. Nevis that they

12  would make the loan cost free. (Nevis Dec. at ¶6.)

13          Most of the representations made to Ms. Nevis regarding her loan turned out to be false. The

14  loan cost more than $55,000 in fees, the monthly payments exceeded her old loan by more than

15  $1,000 and defendants knew or should have known that Ms. Nevis could never make the monthly

16  payments of $5,739.95 when they knew her income was Social Security, of $1,050 per month.

17          Ms. Nevis is 82 years old and financially unsophisticated. She reasonably relied on the

18  brokers and lenders to guide her through the application and loan process as they were her brokers,

19  financial advisors and fiduciaries.

20          Ms. Nevis provided true and honest information to Executive, who was acting as her

21  fiduciary in the capacity of a loan broker and financial advisor. Executive's employees told Ms.

22  Nevis what to do, what to sign filled out the loan applications and submitted these applications to

23  lenders in order to obtain a loan. The lender, New Century has a pattern of making bait and switch

24  and predatory loans to elders and low income communities.

25

26  [1]      Ms. Nevis will prove other violations of law, including violation of the RESPA and Elder Abuse which are
    not unique, but are a part of a pattern and practice of discriminatory and predatory lending against the disadvantaged
27  members of the senior community. For purposes of this motion, however, these arguments are reserved. Ms. Nevis is
    confident that discovery will show that she can also prevail on her RESPA claims, as well as the other claims in her
28  complaint.

1    The conduct of the loan broker, Executive, and the lender, New Century is the subject of a
2    criminal investigation by the office of the District Attorney, Marin County (Nevis Decl. at ¶12.).
3    The lender, New Century, is subject to a Cease and Desist Order issued by the Attorney General of
4    the State of California (Hochhausen Decl at ¶5, Ex. E)

5        New Century underwriters approved plaintiff's loan which carried a monthly payment of
6    $5,739.95 when they knew or should have known that Ms. Nevis' monthly income, derived solely
7    from Social Security, was $1,050 per month. The costs fees and interest New Century derived from
8    the loan in question amount to in excess of $ 25,000. Executive earned in excess of
9    $35,000 for brokering the loan which resulted in a cash payment to Ms. Nevis of approximately
10   $20,000 other defendants earned significant fees in processing and closing the loan. Defendants
11   knew their representations to be false and intended to deceive Ms. Nevis is amply demonstrated by
12   the fact that Executive's agents had to create a phantom income for Ms. Nevis in order to "convince"
13   New Century to accept Ms. Nevis' loan application.

14       Ms. Nevis has been damaged by New Century, Executive and Gateway's fraud. She has
15   suffered monetary damages due to a monthly payment that is five times higher than her income.
16   (Nevis Decl. at ¶15.) Ms. Nevis will suffer further injury if through their agent Quality, New
17   Century and Wells Fargo are allowed to foreclose on her home. Faced with the evidence in this
18   case, a jury is likely to find for Ms. Nevis on her fraud claim.

19       2.    **Ms. Nevis will likely succeed in proving her TILA claim.**

20       New Century committed several Truth in Lending Act ("TILA") violations, each a
21   sufficient ground for compensatory damages, attorneys' fees and among them, failures, which
22   give rise to the right to rescind the loan.. TILA was enacted to "avoid the uninformed use of
23   credit," and to "assure the meaningful disclosure of credit terms so that the consumer will be able
24   to compare more readily the various credit terms available to him." 5 U.S.C. § 1601. TILA is
25   liberally construed and even technical or minor violations impose liability on the creditor. *Jackson*
26   *v. Grant*, 890 F.2d 118, 120 (9th Cir. 1980). Creditors are liable for "a reasonable attorney's
27   fees, as determined by the Court, when borrowers obtain rescission under TILA. 15 U.S.C. §
28

7

1640(a)(3). Where the consumer does not receive the statutory mandated copies, the consumer shall have the right to rescind for up to a period of three years.

The failure to provide timely and adequate copies of the "three Day Notice of Right to Cancel" pursuant to TILA gives Ms. Nevis the right to rescind the loan thereby eliminating the security interest which is the basis for the foreclosure. The fact that the loan has been sold to Well Fargo does not allow the foreclosure to go forward. The rescission remedy runs against any assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title [TILA] may rescind the transaction as against an assignee of the obligation." 15 U.S.C. §1641(c); *Mount v. Las Salle Bank, Lakeview*, 926 F.Supp. 759 (N.D. Ill. 1996); *Stone v. Mehlberg*, 728 F. Supp. 1341 (W.D. Mich. 1989). Failure to deliver the required three-day notice is imputable to Wells Fargo, the owner of the loan and Quality, the assignee.

a.    **TILA Violation Number 1:**

New Century violated TILA by not providing Ms. Nevis with two completed copies of the notice of her three day right to rescind the loan at the time of closing. TILA gives borrowers "the right to rescind the transaction until midnight of the third business day following the consummation of the transaction." 15 U.S.C. § /635. In order to give effect to this right, Regulation Z requires that a creditor provide the consumer with two completed copies of a notice of the right to rescind. 12 C.F.R. §226.23(b)(1). As described above, at the closing on June 8, 2007 which took place at Ms. Nevis' home consisted of the notary flipping through the pages and telling Ms. Nevis to "just sign" a great number of documents.. One of these forms was a TILA notice that Ms. Nevis signed and one was a blank copy bearing the name of New Century but which otherwise contained blanks which were not filled in.. (Nevis Decl. at ¶ 14, Ex. A,) Thus, it is a legal nullity for the purposes of fulfilling the statute. On these facts, courts have found TILA violated. *See e.g Underwood v. American Home Mortgage Co.*, 66 B.R. 656 (Bankr. W.D. Va. 1986) (TILA violated where borrowers rushed through signing and signed incomplete forms).

New Century failed to give Ms. Nevis her requisite two copies of completed notices. While defendants may produce a document acknowledging receipt of two notices, this production

amounts to no more than a rebuttable presumption of delivery of a completed notice. 15 U.S.C. § 1635(c). Numerous courts have held that this presumption can be rebutted by the consumer's testimony that he or she never received the requisite copies, that the closing was rushed and that the right to rescind was not adequately explained. *See e.g. Cole v. Lovett,* 672 F. Supp. 947 (S.D. Miss. 1987); *Stone v. Mehlberg,* 728 F. Supp. 1341 (W.D. Mich. 1989). On the strength of the corroborating evidence of the blank form, Ms. Nevis will prevail on this claim.

                b.       **TILA Violation Number 2:**

New Century violated TILA by extending credit to Ms. Nevis based on falsified income and employment. By not considering Ms. Nevis' current and expected income, current obligations, and employment status to determine whether Ms. Nevis would actually be able to make the scheduled payments to repay her obligations, New Century violated section 1639(h) of TILA, 15 U.S.C. § 1639(h), as implemented by Regulation Z.[2]

       **3.**     **Ms. Nevis will likely succeed in proving Unfair Trade Practices**

"Unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To state a cause of action under the UCA, it is necessary only to show members of the public are likely to be deceived. *Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

New Century breached the UCA in numerous ways, including:

1.     Failing to take into consideration Ms. Nevis ability to repay the loan when they knew or should have known that her income was five times greater than the monthly loan payments violated TILA and Regulation Z.

2.     Misrepresenting to Ms. Nevis the terms upon which New Century and Executive were willing to enter into transactions with her, thereby committing fraud and violating TILA. and committing Elder Financial Abuse as defined by California Civil Code § 3345. .

---

[2]    This section of TILA provides extra protections for consumers of "high fee" loans. It prohibits lenders from "extending credit without regard to payment ability of consumer," specifically requiring that for high-fee mortgages creditors should not extend credit "based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 U.S.C § 1639(h).

1    Any one of the deceptive and fraudulent business practices outlined in this brief can, and in
2    fact has, deceived Ms. Nevis.

3    **D.  Threatened Foreclosure of Ms. Nevis' Home Constitutes Irreparable Harm and the**
4    **Balance of Hardships Favors Ms. Nevis**

5    Foreclosure on Ms. Nevis' home constitutes precisely the kind of irreparable harm that can
6    only be prevented by the grant of preliminary injunctive relief. *See Sundance Land Corp. v.*
7    *Community First Federal Savings and Loan Association*, 840 F.2d 653, 661-662 (9th Cir. 1988)
8    [plaintiff alleged that, in the absence of injunctive relief against foreclosure on property, it would
9    lose the property; held, plaintiff entitled to equitable relief].

10    Furthermore, the balance of hardships in this case indisputably favors the granting of
11    injunctive relief.  Should the foreclosure be permitted to go forward, Ms. Nevis will be homeless in
12    her 82nd year.  On the other hand, there is absolutely no evidence that the lender or their successor
13    in interest Wells Fargo will be significantly inconvenienced if the foreclosure is delayed.

14    **E.   Public Interest Favors Granting Injunctive Relief to Prevent Foreclosure**

15    The news and print media are full of stories about massive numbers of foreclosure based on
16    fraudulent and irresponsible loans made by lenders who pocketed quick profits and left their victims
17    to face foreclosure. The attorney General has taken action to stop the lender in this case from
18    continuing to do business, recognizing that it is unfit to continue doing business in California. Any
19    foreclosure prior to the resolution of this case on the merits will have a very significant negative
20    impact on the lives of others, particularly seniors who have been the victims of similar predatory
21    conduct. Victims of loan swindles such as the one suffered by Ms. Nevis feel stupid and "taken".
22    They're reluctant to come forward because they think no one will believe them when their testimony
23    is matched against that of an institution like a "bank". If Wells Fargo and its agents are permitted to
24    "rip off" a senior and then throw her out of her home, before she can be heard, the message is clear
25    to others who may have considered making a complaint "DON'T BOTHER".

26    This is likely to have a chilling effect on seniors urging their rights and at the same time send
27    a signal to lenders that they will get away with sharp and fraudulent practices. This impact on non-

28

10

1    parties is the issue addressed by the public interest inquiry. *See Sammartano v. First Judicial Dist.*

2    *Ct., in & for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002). Considering that Ms. Nevis

3    is likely to prevail on some or all of her claims, a foreclosure will constitute an unnecessary and

4    unjustifiable trauma in the life of an already injured senior citizen.

5    **III.    CONCLUSION**

6        For all of the foregoing reasons, Ms. Nevis respectfully requests that her Application be

7    granted and that the Court issue:

8        1.      An Order to Show Cause why a Preliminary Injunction should not be issued

9    enjoining    Wells Fargo and Quality, and their officers, agents, servants, employees, and all

10    persons acting in concert with them, or on behalf of them, pending trial of this action from directly

11    or indirectly initiating foreclosure proceedings on a property owned by plaintiff Audrey

12    McNamara Nevis and located at 16 Creekside Drive, San Rafael, California, 94903.

13        2.      A Temporary Restraining Order enjoining Wells Fargo and Quality and their

14    officers, agents, servants, employees, and all persons acting in concert with them, or on their

15    behalf, pending trial of this action from, directly or indirectly, initiating foreclosure proceedings on

16    a property owned by plaintiff Audrey McNamara Nevis and located at 16 Creekside Drive, San

17    Rafael, California, 94903.

18

19    DATED: May _15_, 2007        Respectfully submitted,

20

21

22                            BY:

23                                   SHIRLEY HOCHHAUSEN

24                                   Attorney for Plaintiff Audrey McNamara Nevis

25

26

27

28